1  Erwin J. Shustak, Esq. (SBN 119152)
   George C. Miller, Esq. (SBN 259905)
2  Daniel Ballon, Esq. (SBN 277679)
3  **SHUSTAK REYNOLDS & PARTNERS, P.C.**
   401 West "A" Street, Suite 2250
4  San Diego, CA  92101
   Telephone: (619) 696-9500
5  Facsimile:  (619) 615-5290

6  Attorneys for Petitioners
7  MARK HAYEK, BRANDT KUHN,
   and MIKE MCCONNELL

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No.: 6:17-bk-15816-MH |
| INTEGRATED WEALTH MANAGEMENT, INC., | Chapter 7 |
| Debtor. | **NOTICE OF MOTION AND MOTION OF PETITIONERS MARK HAYEK, BRANDT KUHN, AND MIKE MCCONNELL FOR ORDER RESTRICTING DEBTOR'S USE OF CORPORATE FUNDS AND ASSETS UNDER 11 U.S.C. § 303(f)** |
| | **Hearing Date** |
| | Date: TBD<br>Time: TBD<br>Place: |

1
NOTICE OF MOTION AND MOTION FOR ORDER RESTRICTING DEBTOR'S USE OF FUNDS

S0090386.3

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on the date and time set forth by this Court in the Court's order on Petitioners' Application for Order Setting Hearing on Shorted Notice, filed concurrently herewith, Petitioners Mark Hayek, Brandt Kuhn, and Mike McConnell (collectively, "Petitioners") will and hereby do move, pursuant to 11 U.S.C. § 303(f), for an order restricting Integrated Wealth Management, Inc.'s ("IWM" or "Debtor's") use of corporate funds and assets. The Motion will be heard before the Honorable Mark D. Houle in the above-entitled court, located at 3420 Twelfth Street, Riverside, California 92501. The grounds for this Motion are that Debtor has failed to pay undisputed debts as they come due and can no longer fulfill its ongoing financial obligations, including to Petitioners, and that, given the unique circumstances of this case, there is a substantial likelihood, without this Court's prompt intervention and strict supervision, that Debtor will misappropriate and mismanage corporate funds and assets, to the detriment of Petitioners and other creditors.

**MOTION**

Petitioners Mark Hayek ("Hayek"), Brandt Kuhn ("Kuhn"), and Mike McConnell ("McConnell," and collectively, "Petitioners") move the Court for an order restricting Debtor Integrated Wealth Management, Inc.'s use of corporate funds and assets under 11 U.S.C. § 303(f). This Motion is based on the following memorandum of points and authorities, the declaration of Mark Hayek (the "Hayek Declaration"), the declaration of Brandt Kuhn (the "Kuhn Declaration"), the declaration of Mike McConnell (the "McConnell Declaration"), and any exhibits attached thereto, all filed concurrently herewith and in support of this Motion. The requested relief is necessary to preserve the status quo and protect the interests of Petitioners and other similarly-situated creditors pending the appointment of a Trustee to administer this proceeding. Unless the Court grants this motion, there is a substantial likelihood IWM will misappropriate and mismanage corporate funds, if it has not done so already.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

IWM is a captain-less, rudderless ship in the midst of a turbulent storm. In the past six months alone, IWM, which is an SEC-registered investment advisory firm that once oversaw billions of dollars in client funds, has: (1) lost its founder and CEO to a tragic suicide; (2) been implicated in several multi-million dollar lawsuits involving alleged fraud, misappropriation of client funds, and damages collectively exceeding $10 million; (3) refused to pay Petitioners and other similar creditors approximately $800,000.00 in wages and commissions now due and owing, instead, indicating its intention to appropriate those funds to other uses given the company's precarious financial condition and uncertain future; (4) seen its entire executive and management team resign, leaving the company without any ongoing leadership; (5) lost the vast majority of its employees and clients, leaving the company with virtually no incoming revenue and an utter inability to meet its substantial ongoing financial obligations; and (6) been placed in the exclusive control of a sole director and *de facto* CEO, Anthony Pisano, who has no relevant experience in the financial services industry; who holds no licenses, no accreditations, and none of the supervisory, regulatory, and other training and knowledge required to operate an SEC-registered investment advisory firm; and who, as the surviving spouse of and heir to IWM's deceased CEO, has personal financial interests directly at odds with the best interests of the company and its creditors.

For the reasons detailed herein, Petitioners, who are investment advisors formerly employed by IWM, request an order from this Court, pursuant to 11 U.S.C. § 303(f), restricting IWM's use of corporate funds and assets pending the appointment of a Trustee to oversee this proceeding. IWM has already stated its intention not to pay its former employees nearly $800,000.00 in wages and commissions they are now owed. Without this Court's prompt intervention and strict supervision of IWM's ongoing financial affairs, there is a substantial likelihood that IWM, acting through its sole remaining director, will mismanage and misappropriate these and other funds to the detriment of Petitioners and other similarly-situated creditors.

Petitioners filed the involuntary petition initiating this case against IWM on July 12, 2017, after IWM, through counsel, represented that IWM would not pay Petitioners undisputed advisory fees and commissions for the second quarter of 2017, despite deducting those fees from client accounts, because of IWM's precarious financial position. Petitioners are informed and believe that IWM is no longer able to meet its ongoing financial obligations. In addition to failing to pay Petitioners' undisputed fees and commissions, Petitioners have personal knowledge that IWM has not paid other undisputed debts as they have come due, including its office rent and all wages and benefits due to at least one other employee who resigned from IWM.

For the reasons herein, Petitioners request an order from this Court, pursuant to 11 U.S.C. § 303(f): (1) limiting IWM's use of corporate funds and assets to cover only those expenses incurred in the ordinary course of its investment advisory business; and (2) prohibiting IWM's payment of any unusual or extraordinary expenses or transfers of funds the company may undertake until a Trustee is appointed to oversee this proceeding. Such an order is necessary to protect the interests of Petitioners and other similarly-situated creditors because without this Court's intervention and supervision, given the unique factual circumstances of this case, there is a substantial likelihood IWM, acting through Pisano, will misappropriate and/or mismanage corporate funds and assets, if it has not done so already.

## II. BACKGROUND FACTS

### A. Introduction to the Underlying Dispute

IWM is a corporation organized and existing under the laws of the State of California with its principal place of business in Palm Desert, California. (Hayek Decl. ¶ 2.) It is a registered investment advisory firm regulated by the Securities and Exchange Commission, engaged in the business of providing investment advisory services to clients in exchange for fees and commissions. (Hayek Decl. ¶ 2.) Petitioners are registered financial advisors formerly employed by IWM. (Hayek Decl. ¶ 1; Kuhn Decl. ¶ 1; McConnell Decl. ¶ 1.) As investment advisors, Petitioners are primarily compensated through quarterly advisory fees collected from their clients' accounts. (Hayek Decl. ¶ 3; Kuhn Decl. ¶ 3; McConnell Decl. ¶ 3.) Those fees are collected by Charles Schwab—the broker-

dealer who holds custody of IWM's client investment funds—and paid out to IWM each quarter. (Hayek Decl. ¶ 3; Kuhn Decl. ¶ 3; McConnell Decl. ¶ 3.) IWM, in turn, pays Petitioners their respective share of those advisory fees immediately at the close of each quarter, per the Investment Adviser Representative Agreement between Petitioners and IWM. (Hayek Decl. ¶ 3; Kuhn Decl. ¶ 3; McConnell Decl. ¶ 3.)

Prior to this litigation, IWM had a longstanding pattern and practice of paying Petitioners, and other advisors associated with the firm, their share of advisory fees the week following the close of each quarter. (Hayek Decl. ¶ 4; Kuhn Decl. ¶ 4; McConnell Decl. ¶ 4.) More specifically, IWM's practice had been to bill client advisory accounts the day after the quarter ended and to pay Petitioners and other advisors affiliated with the firm within five to seven business days after receiving payment. (Hayek Decl. ¶ 4; Kuhn Decl. ¶ 4; McConnell Decl. ¶ 4.) This most recent quarter, however, IWM did not follow its longstanding pattern and practice. Petitioners are informed and believe that IWM has billed, and is now holding, approximately $800,000.00 in fees due and owing to Petitioners and other former representatives of IWM for advisory fees, commissions, and wages earned in the second quarter of 2017. (Hayek Decl. ¶ 4; Kuhn Decl. ¶ 4; McConnell Decl. ¶ 4.) On July 5, 2017, however, IWM communicated to Petitioners, through counsel, that it will not pay Petitioners the advisory fees they are owed for the sole reason that IWM is currently not in a good financial position. (Hayek Decl. ¶ 4, Exs. A and B; Kuhn Decl. ¶ 4; McConnell Decl. ¶ 4.) IWM is indebted to Hayek for those unpaid advisory fees in the amount of $70,652.17. (Hayek Decl. ¶ 3.) IWM is indebted to Kuhn for those unpaid advisory fees in the amount of $26,852.17. (Kuhn Decl. ¶ 3.) IWM is indebted to McConnell for those unpaid advisory fees in the amount of $70,615.47. (McConnell Decl. ¶ 3.) As of the date of this filing, IWM has not paid Petitioners the outstanding advisory fees. (Hayek Decl. ¶ 4; Kuhn Decl. ¶ 4; McConnell Decl. ¶ 4.) On July 12, 2017, Petitioners initiated this involuntary bankruptcy proceeding against IWM.

**B.    IWM'S Troubled History**

IWM's financial troubles began in 2015, when James M. Casey, a registered investment advisor and the President, founder, and CEO of IWM, became the subject of multiple lawsuits

alleging Casey had misappropriated substantial client monies from retirement funds and used those funds for his own, personal benefit without client authorization. (Hayek ¶ 5.) In one case that garnered significant public attention, Casey and IWM were sued by film producer Erica Murray for fraud and breach of fiduciary duty. In the complaint, filed in California state court in 2015, Murray alleged Casey diverted millions of dollars from investor accounts to finance risky and highly-speculative film ventures for which Casey was the executive producer. (Hayek Decl. ¶ 5, Ex. C.) The filing of that lawsuit set in motion a chain of events that adversely affected IWM's business and finances and that ultimately put the company on its trajectory toward its certain demise. Among other things, IWM and Casey became the subject of multiple regulatory inquiries and investigations by the Financial Industry Regulatory Authority and the Securities and Exchange Commission and were named in a series of subsequent lawsuits alleging fraud and misappropriation of client funds. (Hayek ¶ 6.)

Casey's and IWM's troubles worsened when the St. Jude Heritage Medical Group fired Casey as its financial advisor in December 2016, with several other of Casey's and IWM's clients following suit shortly thereafter. (Hayek ¶ 7.) Then, in April 2017, St. Jude filed a lawsuit against Casey and IWM, again alleging fraud and breach of fiduciary duty, based on allegations that Casey inappropriately invested millions of dollars from St. Jude's pension fund, including an alleged transfer of $7.1 million into an annuity that resulted in Casey's receipt of a several-hundred-thousand dollar commission, and Casey's alleged misrepresentations surrounding a $1.3 million loan he solicited from the pension fund in favor of another company he owned, Team Jupiter, LLC. (Hayek Decl. ¶ 7, Ex. D.) Together, the total alleged damages in the known legal claims against IWM, Casey, and the other entities Casey owns amount to more than $10 million, and Petitioners have reason to believe there are additional potential claims against Casey and his entities that have not yet been publicly disclosed. (Hayek ¶ 8.)

**C.    IWM's Current Status**

Unfortunately, on May 1, 2017, after details about the lawsuits and allegations for fraud against Casey and IWM were publicly disclosed, Casey committed suicide. (Hayek Decl. ¶ 9.) His

death set in motion IWM's rapid decline. Casey is survived by his spouse, Anthony Pisano, who is now acting as the representative of Casey's estate, the executor of Casey's will, and the successor trustee of the James M. Casey Living Trust (the "Casey Trust"). (Hayek Decl. ¶ 9.) The Casey Trust is the sole owner of IWM, and as the trustee with the right to exercise ownership of IWM, Pisano has appointed himself to serve as sole director and *de-facto* CEO of the company. (Hayek Decl. ¶ 9.) Pisano is an airline flight attendant who resides in New York, New York. (Hayek Decl. ¶ 10.) He is not licensed in the securities industry and, upon information and belief, has no experience working in the financial services industry or operating an SEC-regulated investment advisory firm. (Hayek Decl. ¶ 10.)

Petitioners are informed and believe that IWM is in dire financial straits and is no longer able to meet its ongoing financial obligations, including paying its undisputed debts, like Petitioners', as they come due. (Hayek Decl. ¶ 11; Kuhn Decl. ¶ 5; McConnell Decl. ¶ 6.) In the months since Casey's death, all of IWM's former management and executive team has resigned, IWM has seen a mass exodus of the vast majority of its employees and clients, and the company has been left with no revenue stream, no management team, and no viable plan to help the company recover a stable financial position. (Hayek Decl. ¶ 11.) In addition to not paying Petitioners' undisputed debts for advisory fees, Petitioners have personal knowledge that IWM also has not paid the approximately $20,000.00 it owes for its July 2017 office rent. (Hayek Decl. ¶ 11.) Further, Petitioners have personal knowledge of at least one other employee who resigned from IWM and was not paid out on time, in full, for all vacation time, sick time, and other accrued wages and benefits upon her resignation as required by California law. (Hayek Decl. ¶ 11.)

Petitioners believe there is a substantial likelihood that without this Court's prompt intervention and strict supervision, IWM, acting through Pisano, will misappropriate and/or mismanage company funds and assets, if it has not done so already. (Hayek Decl. ¶ 12; Kuhn Decl. ¶ 6; McConnell Decl. ¶ 7.) Casey's conduct shortly before his death raises serious questions about the extent to which Casey's personal funds have been commingled with IWM funds and suggests a pattern of misappropriation that, to date, has gone unaccounted for. For example, on April 30, 2017,

Casey took out a $300,000.00 rapid advance payday loan, the proceeds of which were deposited into an IWM Wells Fargo bank account. (Hayek Decl. ¶ 13.) When questioned about the deposit by IWM's CFO, Casey responded by stating that the deposit was a "mistake" and abruptly transferred the $300,000.00 out of IWM's bank account and into another unknown account. (Hayek Decl. ¶ 13.) The lender, meanwhile, has continued to charge IWM $1,700.00 *per day*, ostensibly in furtherance of the repayment terms on that loan, and has indicated it will continue to do so for one year per the terms of the loan, which, upon information and belief, is a 12-month loan, payable with 28% advanced interest, for a total liability of $408,000.00. (Hayek Decl. ¶ 13.) The $300,000.00 Casey withdrew from the Wells Fargo account, however, remains unaccounted for. (Hayek Decl. ¶ 13.)

Petitioners believe that as both the beneficiary of Casey's estate and the sole director of IWM, Pisano has a direct conflict of interest because his interests as a beneficiary of the estate are directly at odds with the best interests of the company, its former employees, and other creditors. (Hayek Decl. ¶ 13; Kuhn Decl. ¶ 6; McConnell Decl. ¶ 7.) Hence, Petitioners filed this Motion seeking an order from the Court restricting IWM's use of corporate funds and assets pending the appointment of a Trustee to oversee the bankruptcy estate in this proceeding.

## III. LEGAL ARGUMENT

While the Bankruptcy Code, 11 U.S.C. § 303(f), provides that during the "gap" period putative debtors in involuntary proceedings generally have wide latitude to use, acquire, and dispose of property "as if an involuntary case . . . had not been commenced," the relevant statues and case law also make clear that this right is not absolute and is subject to scrutiny and this Court's limiting orders where evidence exists that the debtor may attempt to abscond with assets, dispose of assets at less than fair market value, or dismantle the business to the detriment of the creditors. Section 303(f) of the Bankruptcy Code states in relevant part:

> [E]xcept to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

11 U.S.C. § 303(f). This provision has generally been interpreted by courts to grant to a debtor in an involuntary bankruptcy proceeding the right to continue operating its business and to continue using property and assets "in the ordinary course of business" in the time between the filing of the involuntary petition and the order for relief (the "gap" period). *In re: Greenwalt*, 48 B.R. 804, 808 (D. Colo. 1985). While this right has been recognized by courts as offering an important protection for alleged debtors in involuntary bankruptcy proceedings, courts have also recognized that this right is not absolute and is subject to scrutiny under other provisions of the Bankruptcy Code and under legal rules intended to protect the interests of creditors by preserving the debtor's estate and preventing loss to the estate. *In re: Brooklyn Overall Co.*, 57 B.R. 999, 1002 (E.D.N.Y. 1986) ("While it is axiomatic that § 303(f) authorizes the debtor to 'use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced during the time frame preceding the issuance of an order for relief,' the debtor's right to dispose of the estate's property or interests during such 'gap' period is not absolute or inviolate but rather is subject to scrutiny . . . ."). *See also In re: Gypsum Co.*, 36 B.R. 360, 363 (D.N.M. 1984) (noting that, despite § 303(f), under section 549 of the Bankruptcy Code, post-petition transfers of property to satisfy pre-petition debt are invalid); *id.* (same as to transfers not performed for contemporaneous consideration).

While section 303(f) does not specify either "the cause sufficient to give rise to relief [under the statute] or the nature of the relief available to an aggrieved party," the case law makes clear that a court is empowered to issue appropriate orders limiting the debtor's operations and restricting its use of property and assets where "it is shown that [the debtor] 'may attempt to abscond with assets, dispose of them at less than fair market value, or dismantle the business, all to the detriment of the creditors.'" *In re: DiLorenzo*, 48 B.R. 752, 754 (S.D.N.Y. 1993) (quoting legislative history). Indeed, the statute explicitly contemplates that possibility—the debtor is free to continue operating its business and to use, acquire, and dispose of its property in the ordinary course of business "***except to the extent the court orders otherwise.***" 11 U.S.C. § 303(f) (emphasis added). *See also* 2 Bankruptcy Law Manual § 14:25 (5th Ed.) ("Code § 303(f) gives the court power to restrict and limit a debtor's operations during the gap period. Where there is evidence that the debtor is likely to abscond with

Case 6:17-bk-15816-MH    Doc 6    Filed 07/25/17    Entered 07/25/17 09:50:19    Desc
Main Document    Page 10 of 12

assets, waste property, or sell goods for less than fair market value, the court may grant appropriate orders to control or limit the debtor's powers . . . ."). A court should exercise this discretion where there is evidence supporting a reasonable belief that, if left unchecked, the debtor may "abscond with assets or dispose of them in some manner detrimental to the debtor's creditors." *In re: Greenwalt*, 48 B.R. at 808.

Such an order restricting the debtor's use of funds and assets is warranted here, as there is a substantial likelihood that IWM, acting through its sole director and *de facto* CEO, Pisano, will abscond with, dispose of, and/or dismantle the business in a manner detrimental to Petitioners and other similarly-situated creditors. First, as described above, the unfortunate turn of events following Casey's suicide have left IWM with essentially no qualified management at the helm to navigate the company out of its current financial position, including investigating and resolving the millions of dollars in claims against Casey and IWM for alleged fraud and misappropriation of client funds. With the recent departure of numerous IWM employees and all of IWM's corporate officers and managers, the company no longer has a compliance officer nor any significant internal supervisory or regulatory oversight. The sole remaining director and *de facto* CEO, Pisano, is not a licensed broker and has no relevant work or management experience. There is a substantial risk that the company's property and assets, including the $800,000.00 in advisory fees IWM has unjustly sequestered and effectively stolen from its former investment advisors will be mismanaged or, as is likely given Pisano's unchecked power, misappropriated. This factor, alone, would warrant this Court's granting Petitioners' Motion. *Compare In re: The Centre for Management and Tech., Inc.*, 2007 WL 3197221 at *6-7 (D. Md. 2007) (granting creditors' request under § 303(g)—with its higher evidentiary standard—to appoint an interim trustee where, among other factors, debtor's records were unreliable, record keeping was deficient, and management lacked knowledge of debtor's business operations); *with In re: DiLorenzo*, 161 B.R. at 734 (denying creditors' request for relief under § 303(f) where the court found "no evidence" supporting creditors' concern debtor would transfer assets to evade creditors).

10
MEM. OF P. & A. IN SUPP. OF MOTION FOR ORDER RESTRICTING DEBTOR'S USE OF FUNDS
S0090386.3

Second, even if Pisano were qualified to lead IWM in this turbulent period, which he is not, his obvious conflicts of interest raise serious doubts as to his ability to objectively manage the company's affairs as it struggles to contain the aftermath of Casey's alleged misconduct, again creating a substantial risk of mismanagement and/or misappropriation of funds and assets to the detriment of creditors. Shortly before his death, Casey engaged in transactions that raise serious questions about the extent to which Casey's personal funds have been commingled with IWM funds, including the $300,000.00 rapid advance payday loan described above. As the executor and beneficiary of Casey's estate, as well as the sole director of IWM, this presents a conflict of interest creating a substantial risk of mismanagement and/or misappropriation of debtor's funds and assets because Casey—and hence, Pisano's—personal financial interests are directly at odds with the best interests of the company, its former employees, and other creditors. This Court's strict supervision is needed to ensure the interests of the creditors, including Petitioners, are protected.

## IV.  CONCLUSION

For the foregoing reasons, Petitioners ask the Court to grant its Motion for Order Restricting Debtor's Use of Corporate Funds and Assets, pursuant to 11 U.S.C. § 303(f). Specifically, Petitioners ask the Court to issue an order:

1. That IWM shall use its corporate funds and assets only to satisfy reasonable, ongoing business expenses routinely incurred in IWM's ordinary course of business of providing investment advisory services;

2. That IWM shall seek approval by this Court or by the Trustee, when and should a Trustee be appointed, for any large or unusual expenditures, including, but not limited to, those related to the: (1) retention of or payments to any legal or other professional service providers; and (2) payment of extraordinary or unusual director's fees, salaries or other preferential payments to officers, directors, affiliates, or other creditors of IWM;

3. That IWM shall provide Petitioners at least ten (10) calendar days' advanced notice of any intention to encumber, transfer, or otherwise dispose of any asset, and shall

disclose in such notice: (1) the nature of the proposed transaction and (2) the transaction's principal terms, including but not limited to, the identity of the proposed transferee and the transferee's relationship to IWM; and

4. That IWM shall segregate and hold separately the approximately $800,000.00 in commissions and advisory fees IWM has collected but failed to pay to Petitioners and other members of Integrated Wealth Management, LLC.

DATED: July 25, 2017

SHUSTAK REYNOLDS & PARTNERS, P.C.
ERWIN J. SHUSTAK, ESQ.

  s/ Erwin J. Shustak
Erwin J. Shustak

*Attorneys for Petitioners Mark Hayek, Brandt Kuhn, and Mike McConnell*